IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD FRIEDLAND,** | : | Case No. 2:21-cv-05404-JDW |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL ZAKEN,** | : | |
| Respondent. | : | |

### MEMORANDUM

Edward Friedland seeks a writ of habeas corpus on the theory that his conviction in Pennsylvania state court for second degree murder was the product of ineffective assistance of counsel. In a Report and Recommendation dated December 8, 2023 (the "R&R"), Magistrate Judge Scott W. Reid recommends that I deny in part and dismiss in part as untimely the Petition. Mr. Friedland objected, though he only argues about one objection and otherwise rests on the arguments he made before Judge Reid.[1] I will adopt the factual recitation in the R&R. After conducting a *de novo* review of Mr. Friedland's objections, I overrule them and adopt the R&R.

---

[1] The Commonwealth did not respond to Mr. Friedland's Objections. Local Rule of Civil Procedure 72.1.IV(b) requires a party who intends to respond to objections to a Report And Recommendation to do so within 14 days of the filing of the objections. I am aware that some judges of this Court do not follow this Rule in habeas cases and instead permit a respondent to wait until the judge invites a response. I do not follow that procedure; instead, I adhere to the Rules, and I have informed the Philadelphia District Attorney's Office (which represents the Commonwealth in this action) of that policy in past cases. I will therefore assume that the Commonwealth has nothing further to add and will proceed without its input.

I.   **ANALYSIS**

   A.   **Issue One: Trial Counsel's Advice**

   **1.   Hearing**

Mr. Friedland urges me to hold an evidentiary hearing to resolve factual disputes in the record. I can't, though. Mr. Friedland and the Commonwealth agree that Mr. Friedland did not present to the PCRA Court his argument that his trial counsel improperly advised him to reject a plea offer. The issue is before me only because the Commonwealth agreed not to assert procedural default against Mr. Friedland. However, federal law still bars a hearing in these circumstances.

28 U.S.C. § 2254(e) provides that if an applicant for a writ of habeas corpus has "failed to develop the factual basis of a claim in State court proceedings, the court **shall not** hold an evidentiary hearing on the claim . . . ." 28 U.S.C. § 2254(e)(2) (emphasis added). The statute includes exceptions to this prohibition if the claim relies on (i) a new rule of constitutional law or (ii) a factual predicate that the petition could not have previously discovered through the exercise of due diligence. *See* § 2254(e)(2)(A). The Supreme Court has explained that Section 2254(e) distinguishes between "prisoners who exercise diligence in pursuing their claims [and] those who do not." *Williams v. Taylor*, 529 U.S. 420, 436 (2000).

I have no basis to hold a hearing in this case. There's no new rule of constitutional law at issue. There was also nothing to prevent Mr. Friedland from developing the factual predicate for his ineffective assistance claim. He knew that he had gone to trial, and he

knew about the conversations that he claims he had with his trial counsel. He also knew how to raise ineffective assistance claims in PCRA petitions because he raised a litany of them in his *pro se* PCRA petitions. He just didn't raise this one.

This is the archetype of a case where factual development in the state courts was important. If Mr. Friedland had raised this challenge in a PCRA petition, then the PCRA Court would have had an opportunity to develop information from Mr. Friedland's trial counsel, David Rudenstein, about the conversations that Mr. Friedland alleges took place. Mr. Rudenstein died between the filing of PCRA petitions and the filing of the petition in this case. The absence of that information comes from Mr. Friedland's failure to raise the issue in the PCRA Court.

It does not help Mr. Friedland that the Commonwealth waived its procedural default defense in this case. Procedural default is a defense that arises from the exhaustion requirement in 28 U.S.C. § 2254(b). That statutory section authorizes a state to waive the exhaustion requirement. *See* § 2254(b)(3). Section 2254(e), however, does not contain similar language, nor does it relax its prohibition for situations where a state waives the procedural default defense, and I will not infer that Congress intended to allow for such a hearing without saying it. *See Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 341–42 (2005).

**2. Merits**

Because I cannot hold a hearing, I must resolve Mr. Friedland's ineffective assistance of counsel claim on the record before me. To prove such a claim, a petitioner has the burden to prove that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" considering all the circumstances. *Id.* at 688. Courts must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Courts must evaluate counsel's performance from counsel's perspective at the time without relying on hindsight. *Id.*

A petitioner has the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). If "the record does not explicitly disclose trial counsel's actual strategy or lack thereof . . . the presumption may only be rebutted through a showing that no sound strategy posited by the Commonwealth could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). Demonstrating more effective, alternative strategies does not satisfy *Strickland*'s deficiency requirement. *See Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). The petitioner's own statements and actions can determine or substantially influence the

reasonableness of counsel's actions. *See Florida v. Nixon*, 543 U.S. 175, 178 (2004) Counsel's representation falls below an objective standard of reasonableness if counsel fails to make any effort to convey a formal plea offer before it expires. *Missouri v. Frye*, 566 U.S. 134, 145, 150 (2012).

The record before me does not demonstrate that Mr. Rudenstein did anything that caused Mr. Friedland to reject a plea deal on the eve of trial. In 2013, Mr. Rudenstein told Mr. Friedland what theory they would offer as part of a defense, and in 2014, Mr. Rudenstein broached the possibility of a plea. At the same time, Mr. Rudenstein reported that he planned to take the case to trial because "that is what you [Mr. Friedland] have directed me to do." (ECF No. 28-2 at A324.) Mr. Friedland had instructed Mr. Rudenstein to take the case to trial. After trial, during a call with a friend from prison, Mr. Friedland did not suggest that he rejected a plea deal based on Mr. Rudenstein's advice or even Mr. Rudenstein's assessment of the strength of his defense. Those facts all suggest that the decision to go to trial was Mr. Friedland's open-eyed choice, not a product of Mr. Rudenstein's advice.

The facts to which Mr. Friedland points on the other side of the ledger do not overcome the presumption that Mr. Rudenstein acted reasonably. *First*, Mr. Friedland points to his recollections of his conversations with Mr. Rudenstein about the plea deal to argue that Mr. Rudenstein advised him to reject the plea. But the record before me doesn't include Mr. Friedland's recollection, so I have no basis to consider it. Nor, as I have noted,

5

can I hold a hearing to elicit testimony from Mr. Friedland about his recollection. It therefore cannot impact my assessment of the reasonableness of Mr. Rudenstein's performance.

*Second*, Mr. Friedland points to Mr. Friedland's decision to agree to a bench trial as evidence of Mr. Rudenstein's belief that Mr. Friedland could prevail at trial. But it's not at all clear that Mr. Rudenstein advised Mr. Friedland to accept a bench trial. Nor is it clear why Mr. Rudenstein did so. It's possible, as Mr. Friedland argues, that Mr. Rudenstein advised Mr. Friedland to agree to a bench trial because Mr. Rudenstein believed he had a legal case to make that a judge might accept at trial. Or it's equally possible that Mr. Rudenstein, faced with a client who didn't want to accept a plea, suggested a bench trial as a way to get a judge to buy a long-shot argument. At a minimum, both possibilities are equally likely (if the latter possibility isn't more likely). It would be, at best, a logical leap for me to conclude that the advice about a bench trial reveals anything about Mr. Rudenstein's personal thought process or his advice to Mr. Friedland.

*Third*, Mr. Friedland points to Mr. Rudenstein's exchange with the trial judge during the judge's colloquy with Mr. Friedland in which Mr. Rudenstein expressed his view of the law of felony murder as evidence that Mr. Rudenstein thought that Mr. Friedland could prevail at trial. But Mr. Rudenstein didn't disagree with the trial judge about the legal principles, and the comments that he made during his colloquy don't shed as much light as Mr. Friedland suggests about Mr. Rudenstein's belief in his argument. Lawyers make

arguments, even ones they know have low chances of success, all the time. And Mr. Rudenstein, knowing that Mr. Friedland had agreed to a bench trial, had reason to use the trial judge's colloquy as an opportunity to preview for the trial judge the argument he was going to make.

None of this signals Mr. Rudenstein's belief in his argument's likely success. During the colloquy with the trial judge, Mr. Rudenstein told the judge that he had discussed the issue with Mr. Friedland. But even that doesn't shed light on what Mr. Rudenstein discussed with Mr. Friedland, including what strength or weakness he assigned to the argument. It just reveals that they had discussed the issue and that, based on those discussions, Mr. Rudenstein was making the argument he made. As with the evidence about the bench trial, I would have to make a logical leap, not just draw an inference, to conclude that Mr. Rudenstein's argument in court was indicative of his advice to Mr. Friedland.

In his Objection, Mr. Friedland complains that Judge Reid concluded that the evidence on which Mr. Friedland sought relief was susceptible to innocent interpretations. But that's the point of a burden of proof. If there are two possible interpretations to the evidence, the party with the burden of proof has to demonstrate that its favored interpretation is more likely. When Judge Reid and I look to those innocent explanations, it's an appropriate application of the burden of proof, not something problematic. It's also worth noting that Mr. Friedland engages in the same exercise in reverse when he tries to

7

explain away his post-conviction phone calls by pointing to potentially innocent explanations of the recordings. (*See* ECF No. 46 at 10-11.)

Finally, Mr. Friedland argues that Judge Reid erred by concluding that the Supreme Court's decision in *Lafler* requires affirmative advice to reject the plea agreement. *See Lafler v. Cooper*, 566 U.S. 156 (2012). But throughout the R&R as a whole, Judge Reid does consider both the possibility that Mr. Rudenstein advised Mr. Friedland to reject the plea or just led him there by suggesting that he could win at trial. (*See, e.g.*, ECF No. 43 at 12-13.) In any event, this argument misses the point because the record does not demonstrate anything that Mr. Rudenstein did, either affirmatively or by omission, that caused Mr. Friedland to reject his plea deal.

### B. Issues Two And Three

Mr. Friedland does not offer any specific objection to Judge Reid's analysis of the other issues in his Petition. Instead, he says that he "rests on the arguments made in his counseled habeas memorandum . . . ." (ECF No. 46 at 1.) A district judge must conduct a *de novo* review only of "those portions of the report or specified proposed findings or recommendations to which an objection is made." 28 U.S.C. § 636(b)(1)(C). Mr. Friedland didn't make objections to the remaining issues; standing on the arguments he already made is not the same as objecting to Judge Reid's analysis. On that basis alone, I could overrule those objections. But they also fail on the merits.

### 1.   Timeliness

Judge Reid concluded that both of Mr. Friedland's remaining claims are too late. Mr. Friedland does not challenge that conclusion, nor does it appear that he could. The AEDPA requires petitioners to file habeas petitions within one year of the time that a state sentence becomes final, with time excluded while state post-conviction relief petitions are pending. *See* 28 U.S.C. § 2244(d)(1)(A). The one-year clock began to run on February 9, 2017, which was 30 days after the Pennsylvania Superior Court affirmed Mr. Friedland's judgment of sentence. He filed a PCRA petition 308 days later, on December 14, 2017. The Superior Court affirmed the PCRA court's order on September 29, 2021, so the one-year limitations period expired on November 26, 2021.[2] But Mr. Friedland did not file his petition until December 2, 2021.[3]  The Commonwealth has not waived its statute of limitations defense on these claims, so the time-bar applies.

### 2.   Merits

#### a.   Issue two: failure to investigate mitigating factors

Mr. Friedland procedurally defaulted this claim. He did not raise it before the Pennsylvania courts. He has not argued that there is a basis to excuse procedural default, Judge Reid did not find one, and neither do I. And the Commonwealth has not agreed to waive its procedural default defense for this argument.

---

[2] November 25, 2021, was Thanksgiving. The day after Thanksgiving was not a holiday, so the clock continued to run on that day.
[3] Mr. Friedland signed the Petition on November 29, 2021. Even if that's the applicable date of filing, it was too late.

In any event, I agree with Judge Reid that there's no reason to think that Mr. Friedland could succeed on this claim on the merits. Nothing in the record supports his argument that a prosecutor would have considered his background or life experiences in deciding what plea offer to make. Rank speculation is not a basis for habeas relief.

### 3.     Issue three: speedy trial

I agree with Judge Reid that it's unlikely that Mr. Friedland could succeed on the merits of this claim. Much of the delay that Mr. Friedland experienced in state court was a result of his co-defendant's counsel's schedule, not delays by the Commonwealth or the trial court. Mr. Friedland hasn't pointed to any prejudice that he might have suffered from the delay, nor has he demonstrated that the conditions of his incarceration were so problematic to justify relief.

## C.     Certificate Of Appealability

For a certificate of appealability, an applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). To make a substantial showing, the applicant must "show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

I will not issue a certificate of appealability on this case. There's no dispute about the timeliness or procedural default ruling on the second and third issues that Mr. Friedland raises. As to his ineffective assistance of counsel claim, my analysis reveals that

Mr. Friedland's arguments rest largely on speculation. And while a hearing might have allowed Mr. Friedland to close the evidentiary gaps in his case and satisfy his burden, I do not have the power to hold such a hearing. None of this is subject to debate, and therefore none of it warrants issuance of a certificate of appealability.

## II.  CONCLUSION

Burdens of proof matter. Mr. Friedland has a burden of proving that his lawyer's conduct fell below the guaranteed standard. He can't satisfy that burden by pointing to ambiguities or gaps in the record. I therefore have no basis to conclude that his lawyer did anything to cause him to reject the Commonwealth's plea offer. His remaining claims are time barred and lack merit. I will therefore adopt Judge Reid's R&R, deny the Petition in part, and dismiss it as untimely in part. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 7, 2024